# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

CLIFTON VERETTO,

    Plaintiff,

vs.                                                                     Civil No. 99-0121 WWD/LCS

WILLIAMS FIELD SERVICE ROCKY
MOUNTAIN REGION COMPANY,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Defendant's Motion for Partial Summary Judgment, filed March 22, 2000 **[docket # 39]**. This is a claim for personal injuries resulting from Plaintiff's exposure to a chemical at Williams Field Services Milagro Plant, filed in federal court on the basis of diversity. Having considered the parties' briefs and the applicable law, I find that Plaintiff's motion is well-taken in part and granted in part, and not well-taken in part and denied in part.

## BACKGROUND

Plaintiff ("Veretto") was employed by Industrial Mechanical, Inc., an independent contractor who contracted for Plaintiff to work at Defendant's Milagro business location. In early March 1998, Plaintiff was performing welding services at the Milagro Plant when he was allegedly exposed to hazardous substances, including methyldiethanolemaine ("MDEA"), causing injury to his health and permanent physical deterioration. He alleges six grounds for relief: Negligence, Negligence Per Se; Breach of Contract, Breach of Covenant of Good Faith and Fair Dealing; Intentional and/or Negligent Misrepresentation; and Strict Liability for Hazardous Activities. In

his negligence claims, Veretto refers to various alleged violations under the Occupational Safety and Health Act ("OSHA"), 29 U.S.C. § 651, et seq and its regulations in contending that Williams failed to inform and warn him of the dangers and hazards he would be exposed to at the Milagro Plant.

Defendant ("Williams") denies the existence of unreasonably dangerous conditions at its Milagro Plant and denies that Plaintiff suffered from any exposure to hazardous substances. Williams further contends that the sole, proximate cause of Plaintiff's injuries resulted from the acts of third parties for which Williams is not liable as well as from Plaintiff's own negligence. Defendant contends that Plaintiff should be able to proceed only on Claims One and Two (Negligence and Negligence Per Se) and seeks dismissal of Claims Three through Six.[1]

## DISCUSSION

Plaintiff concedes that the Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing claims should be summarily dismissed. Thus, issues for summary judgment concern Claims Five and Six only: Negligent and Intentional Misrepresentation Claims and Strict Liability for Ultrahazardous Activity.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Roberts v. Progressive Independence, Inc., 183 F.3d 1215, 1219 (10th Cir.1999)

---

[1] In the Pretrial Order, Defendant contends that Plaintiff is precluded from alleging causes of action, including negligence per se, which are premised on alleged OSHA violations since OSHA does not provide a private cause of action. Pretrial Order at 5,6. This issue is not raised in the present motion.

(citing Fed.R.Civ.P. 56(c)). When applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. Id. (citation omitted).

***Negligent and Intentional Misrepresentation Claims***

*Negligent Misrepresentation*

The complaint alleges that Williams did not educate or warn Plaintiff about the dangers and hazards he would encounter at the Milagro Plant and that these misrepresentations were made negligently, or in the alternative, intentionally in order to induce Plaintiff into taking the job. Veretto contends that he would not have worked in the Milagro Plant had he known the dangers and hazards to which he would be exposed. Pltff's Ex. B (Veretto Depo.).

However, after reviewing the parties' submissions, I find that Plaintiff has, at most, a viable claim only for negligent misrepresentation. A negligent misrepresentation may involve a statement that is literally true but misleading. Eckhardt at 562. While Plaintiff acknowledges that he attended a safety meeting, he contends that the Williams personnel downplayed the dangers he would be exposed to at the Milagro Plant. Plaintiff's contentions are sufficiently supported by statements made in witnesses' depositions so as to create a material dispute of fact regarding the discussions that took place at the safety meeting.[2] See, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (mere assertions that a fact is or is not controverted are insufficient). The evidence shows some disagreement, or at least some confusion and memory lapses, concerning

---

[2] Contrary to Defendant's assertions, Plaintiff *does* challenge several of Defendant's undisputed facts, viz., 8, 9, 10, 11 and 12. See Resp. at 2 (Contested Mat'l Facts).

3

the amount of information provided about working with amine systems at the Milagro site.[3]
Because the factual evidence in the present case relies on either deposition testimony or affidavits, summary judgment is not appropriate on this particular claim. See Smith v. Maschner, 899 F.2d 940 (10th Cir. 1990) (summary judgment should not be granted where different inferences can be drawn from conflicting evidence, particularly when an issue turns on credibility).

*Fraudulent or Intentional Misrepresentation*

Summary judgment is appropriate, however, on Plaintiff's alternate theory of Intentional Misrepresentation. Plaintiff contends that Williams purposely or recklessly concealed and misrepresented what it knew about MDEA in order to induce him to work at the Milagro Plant. See Eckhardt, 125 at 562 (intent to deceive required for a viable claim of intentional misrepresentation). Other than Plaintiff's own conclusory statements, none of the facts presented in the pleadings or accompanying exhibits supports this contention. See Cole v. Ruidoso Mun. Schools, 43 F.3d 1373, 1382 (10th Cir. 1994) (conclusory statements are insufficient to defeat a motion for summary judgment).

Parties present testimony on what information was routinely discussed at these safety meetings. See, Deft's Ex. B (Chapman Depo. at 21:8-18); Pltff's Ex. [unmarked] (Brower Depo. at 27:7-13). The fact that there is a lack of consistency in the recall of what was covered at the particular meeting Plaintiff attended is not evidence of an intentional or reckless concealing of information. As a way of demonstrating what information he did *not* receive, Veretto refers to the

---

[3] There is even some confusion *within* a single deposition as to what areas were covered. Cmp., e.g., Deft's Ex. D (Hensley Depo. at 17:2-8) with Pltff's Ex.[unmarked] (Hensley Depo. at 15:17-25 and at 64:7-17).

Material Data Safety Sheet ("MSDS") which describes the potential hazards of MDEA, safety and handling precautions and exposure protection. Pltff's Ex. A. Defendant points out that these materials were made available to Plaintiff, and Plaintiff does not contend otherwise. See Perez Depo. at 17:16-20; Pltff's Ex. [unmarked];(Fowler Depo. at 12:7-14); see also Anderson v.Liberty Lobby, 477 U.S. at 256 (court accepts as undisputed all facts admitted by both parties and all facts for which no competent contrary evidence has been presented by the opposing party).

Even viewing the evidence and drawing all inferences in the light most favorable to the Plaintiff, the facts and circumstantial evidence in this case are insufficient from which a reasonable juror could infer an intent to deceive on the part of Defendant and summary judgment is granted on this claim.

***Strict Liability for Ultrahazardous Activity***

Plaintiff alleges in Claim Six that Williams engaged in ultrahazardous activity by the discharge of amine mist into the work environment and by the maintenance of toxic chemicals on the work premises, and that as a result Defendant is strictly liable for Williams' injuries caused by the activity.

New Mexico first recognized the doctrine of strict liability for ultrahazardous or abnormally dangerous activities in Thigpen v. Skousen & Hise, 64 N.M. 290, 294-95 (1958), cited in Schwartzman Inc. v. Atchison, Topeka & Santa Fe Railway Co., 842 F.Supp. 475, 477 (D.N.M. 1993), imposing strict liability for conducting blasting activities. Defendant points out that New Mexico has never extended the doctrine outside the blasting context. While I agree with Plaintiff's position that the doctrine's application to the detonation of explosives is not a "substantive limitation" on strict liability and requires a case-specific inquiry, see Schwartzman,

5

842 F.Supp. at 478, I find that it is nevertheless applied sparingly, and find that it does not apply in this case.

The Restatement (Second) of Torts §§ 519-520 (1977) sets forth the doctrine of strict liability for ultrahazardous activities in the form of six factors which a court must consider in order to determine whether a given activity is "ultrahazardous" or "abnormally dangerous."[4] The two terms are used interchangeably since "ultrahazardous" was changed to "abnormally dangerous" in the Second Restatement. See Saiz v. Belen Sch. Dist., 113 N.M. 387, 397, n.8 (1992); Schwartzman, Inc. v. Atchison, Topeka & Santa Fe Railway Co., 842 F.Supp. 475, 476 n.1 (D.N.M. 1993). The conjunctive language in the set of factors requires that all six factors must be found to exist in order to extend the doctrine to a particular case.

In this case, the Milagro business location is a natural gas processing plant. I find that it is not inappropriate that toxic chemicals, including MDEA, be handled, stored or discharged at this type of a facility or that a welder be exposed to these substances in the work environment. Thus, the fifth Restatement factor is not met. Cmp., Otero v. Burgess, 84 N.M. 575, 579 (Ct.App.), cert. denied, 84 N.M. 560 (1973) (cited in Schwartzman at 477) (imposing doctrine of strict

---

[4] The six factors listed in the Restatement (Second) of Torts § 520 (1977) are as follows:
(a) existence of a high degree of risk of some harm to the person, land or chattels of others;
(b) likelihood that the harm that results from it will be great;
(c) inability to eliminate the risk by the exercise of reasonable care;
(d) extent to which the activity is not a matter of common usage;
(e) inappropriateness of the activity to the place where it is carried on; and,
(f) extent to which its value to the community is outweighed by its dangerous attributes.

New Mexico has adopted the Restatement in applying the doctrine of strict liability to ultrahazardous activities. See First Nat'l Bank v. Nor-Am Agricultural Products, Inc., 88 N.M. 74, 79 (Ct.App.), cert. denied, 88 N.M. 29 (1975), cited in Schwartzman, 842 F.Supp. at 476.

6

liability on activity where storage of explosives was inappropriate to the place in which they were stored).

Since New Mexico law governs in the present case, see Perlmutter v. United States Gypsum Co., 54 F.3d 659, 662 (10th Cir. 1995), Plaintiff's citations to numerous cases from other courts have little persuasive value. Further, none of those cases are on point, and several are not even fairly analogous. Cmp., e.g., State v. Ventron Corp., 468 A.2d 150, 160 (N.J. 1983) (mercury is particularly inappropriate in the Hackensack Meadowlands, an environmentally sensitive area where the arterial waterways will disperse the pollution through the entire ecosystem).[5]

Moreover, I find no merit to the implication that the shift in terminology from "ultrahazardous" to "abnormally dangerous" weakens the requirement of the third Restatement factor ("inability to eliminate the risk by the exercise of reasonable care"). Whether referred to as "ultrahazardous" or "abnormally dangerous," the concept as set out in the Restatement involves a "serious risk of harm that cannot be eliminated by adequate precautions -- either the exercise of 'reasonable care' or 'utmost care' depending upon the present or earlier formulation of the rule." Saiz v. Belen Sch. Dist., 113 N.M. 387, 397, n.8 (1992); Schwartzman at 478-79 (finding that the activity presented risks that possibly could not have been eliminated by the exercise of reasonable care, but declining to impose strict liability pending further development of the record). The facts in the present case do not meet this third Restatement factor. The routine safety meetings and availability of the MSDS to workers attest to the fact that the risks associated with the toxic

---

[5] One of the cases is from a jurisdiction which has not adopted the Restatement standard. See Rayan v. Greenville County, 315 S.C. 447, 461 (Ct.App. 1993) (Pltff's Resp. at 11).

substances being used in the workplace can be avoided. See e.g., Brower Depo. at 27: 8-15; Shorter Depo. at 78: 7-15 (statements concerning procedures to take to avoid possible harmful effects of amine mist. 7-15).

Because the facts in this case do not satisfy all the Restatement factors on strict liability for abnormally dangerous activities, strict liability cannot be imposed on Defendant. Summary judgment will be granted to Defendant on this claim.

*Liability of Employer*

As another basis for dismissal of the Plaintiff's strict liability claim, Defendant cites to Stinson v. Berry, 123 N.M. 482 (Ct.App. 1997) to contend that strict liability cannot be imposed on the employer of an independent contractor for injuries to the independent contractor or his employees who perform "inherently dangerous" work. I need not decide on the merits of this argument, given that I am granting summary judgment on this claim on another basis. However, I note in passing that the rule has no bearing on this case. The discussion concerning strict liability in Stinson, which was based on Saiz, 113 N.M. at 394-95, was limited only to activities which are "inherently dangerous" or which have a "peculiar risk" in the context of an employer's nondelegable duty, and which are distinguished from "ultrahazardous" or "abnormally dangerous" activities. See, Torres v. El Paso Elec. Co., 127 NM 729, 741 n.5 (1999)(citing Saiz, 113 N.M. at 394 n.6 & 396-97).[6] Plaintiff's allegations are based on the latter category of activity.

---

[6] Saiz describes "inherently dangerous" activities as an "intermediate category of hazardous activity between those that are nonhazardous (or only slightly so) in which harm is merely a foreseeable consequence of negligence, and activities that are ultrahazardous, in which the potential for harm cannot be eliminated by the highest degree of care." At 396. The doctrine of ultrahazardous (now "abnormally dangerous activities" under the Restatement) "imposes responsibility upon persons engaged in such activities for any resulting harm even though all reasonable precautions have been taken against the risk of harm the activity creates." At 397.

8

## CONCLUSION

Plaintiff concedes to the dismissal of Claims Three and Four. These claims are dismissed with prejudice. Because I find insufficient evidence to allow a reasonable jury to find for the Plaintiff on a theory of Intentional Misrepresentation, that part of Claim Five is dismissed as well. Finally, the facts in this case do not meet the requirements which would allow the imposition of strict liability on Defendant and Claim Six will be dismissed as well.

**WHEREFORE**,

**IT IS ORDERED** that Defendant's Motion for Partial Summary Judgment **[docket # 39]** is hereby GRANTED IN PART and DENIED IN PART;

**IT IS FURTHER ORDERED** that Claims Three and Four (Breach of Contract and Breach of Covenant and Fair Dealing) are hereby DISMISSED WITH PREJUDICE;

**IT IS FURTHER ORDERED** that Plaintiff's Claim Five for Intentional Misrepresentation, is hereby DISMISSED WITH PREJUDICE;

**IT IS FURTHER ORDERED** that summary judgment is hereby DENIED on Plaintiff's Claim Five for Negligent Misrepresentation;

**IT IS FINALLY ORDERED** that Plaintiff's Claim Six for Strict Liability for Ultrahazardous Activity is hereby DISMISSED WITH PREJUDICE, leaving Plaintiff to proceed on Claims One and Two, and Claim Five on Negligent Misrepresentation.

UNITED STATES MAGISTRATE JUDGE